## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DANIEL GREAGOR,

      Plaintiff,

v.                                                                           Case No. 3:24-cv-1309-MMH-LLL

JACKSONVILLE SHERIFF'S
OFFICE, et al.,

      Defendants.

_____

## O R D E R

**THIS CAUSE** is before the Court on Defendant Cecil A. Grant III's Motion to Dismiss Count X of Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Doc. 39; Motion), filed July 23, 2025. In the Motion, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), Officer Grant seeks dismissal of the intentional infliction of emotional distress claim Plaintiff Daniel Greagor brings in his Complaint and Demand for Jury Trial (Doc. 32; Amended Complaint), filed July 9, 2025. In opposition to the Motion, Greagor timely filed Plaintiff's Response to Defendant Grant's Motion to Dismiss (Doc. 43; Response), filed August 8, 2025. Accordingly, this matter is ripe for review.

## I.    Background[1]

On December 23, 2022, the Jacksonville Sheriff's Office (JSO) dispatched Officers Cecil Grant and Michael Dunneback to Daniel Greagor's home. See Amended Complaint ¶¶ 12, 17. "Upon arrival," the officers "made contact with [Greagor's] wife, Jennifer Greagor." Id. ¶ 13. Jennifer Greagor advised that Greagor had thrown her mother's belongings out and that he was screaming and threatening to have her mother removed from the residence. Id. ¶ 14. Jennifer Greagor also told Officer Grant that, although Greagor had been violent in the past, he had not touched her on this occasion. Id. With respect to his previous violence, Jennifer Greagor explained that, two years prior, she got "an injunction against [Greagor] after he . . . put his hands on" her. Id. Greagor completed an anger management program, and Jennifer Greagor allowed him to return to the home. Id. Jennifer Greagor told the officers that Greagor "ha[d] significant pain, so he [was taking] morphine and drink[ing] 'way too much.'" Id. "She asked the officers if she could obtain another injunction" against Greagor "in the future if she felt [that he] was a danger[.]" Id. Officer Grant explained that the officers could not force Greagor to leave the home because he

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Greagor, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Amended Complaint and may differ from those that ultimately can be proved.

had not committed a crime." Id. ¶ 15. However, the officers suggested "Florida's Marchman Act[] . . . as an option to force [Greagor] to get help." Id.

With the officers following her, Jennifer Greagor went into the bedroom where Greagor was sleeping, woke him up, and then immediately exited the room. Id. ¶ 16. Greagor, "upset to be woken up to two police officers in his room[,]" asked why they were there and "asked [them] to leave[.]" Id. ¶ 17. The officers asked Greagor if he had been arguing with his wife. Id. Greagor stated that he had been sleeping and that he would not answer the officers' questions. Id. Greagor also "told [the officers] he wanted his lawyer." Id. According to Greagor, the officers ignored his request and kept asking if he had been arguing with his wife. Id. When Greagor "continued to request that his attorney be present for questioning[,]" Officer Dunneback responded, saying, "Sure, if you want to call your attorney at, ah, let's see 6:30 at night on a holiday and pay . . . him . . . like $400 . . . an hour to answer questions." Id. ¶ 18. Greagor then "raised his voice[,]" and Officer Grant told Greagor that "he would be arrested for resisting arrest[]" if he kept "rais[ing] his voice[.]" Id. The officers continued asking Greagor questions, and he continued to refuse to answer them and asked the officers "to leave his house." Id.

Greagor laid down in his bed to go back to sleep, id., and the officers exited the room, id. ¶ 19. After leaving the bedroom, Officer Dunneback told Jennifer Greagor to call her husband's employer and report that he had been drinking.

Id. Greagor "then exited his room[]" and "st[ood] next to [Officer] Grant." Id. ¶ 20. When Officer Grant said, "You said you were going to sleep[,]" Greagor "put his right hand up[,]" without "ma[king] . . . contact with" Officer Grant, to indicate that he posed "no threat." Id. Officer Grant "then punched [Greagor] in the upper chest," causing Greagor to fall backward. Id. ¶ 21. As Greagor fell, Officer Grant punched him in the face. Id. Greagor retreated to his bedroom. Id. Officer Grant continued to hit Greagor in the face, saying, "You don't touch me!" and Officer Dunneback repeated, "Don't touch him!" Id. Greagor fell to the ground next to his bed. Id. ¶ 22. Officer Grant then jumped on top of Greagor, continuing to hit him in the face. Id. As he was being punched, Greagor covered his face with his hands and yelled, "STOP!" Id. ¶¶ 22–23. The officers repeatedly ordered Greagor "to put his hands behind his back[,]" id. ¶ 22, but he could not do so "because he was covering his face to protect [himself] from [Officer] Grant's punches[,]" id. ¶ 23.

Eventually, the officers placed Greagor's "hands behind his back and took him into custody." Id. ¶ 24. When Officer Grant told Greagor, "You're not gonna put your hands on me[,]" id., Greagor "exclaimed, 'You just beat the shit out of me for no reason[,]'" id. ¶ 25. "While escorting [Greagor] to the [police] vehicle," Officer Grant bent Greagor's "wrist in the form of a wrist lock," which caused Greagor "extreme pain[.]" Id. ¶ 26. Greagor "yelled, 'You beat the shit out of me

in my own house!'" <u>Id.</u> ¶ 27. And Officer Grant replied, "Keep your hands to yourself next time." <u>Id.</u>

The officers "called rescue" for Greagor but made him wait outside in the forty-one-degree weather while wearing his boxer shorts. <u>Id.</u> ¶ 28. When Greagor requested clothes or a blanket, the officers joked about him being cold. <u>Id.</u> Greagor stood outside in his underwear for "twenty minutes and fifty seconds" until a larger police vehicle arrived to transport him to the jail. <u>Id.</u> ¶ 29.

Sometime after the incident, Officer Grant resigned from JSO and was arrested for official misconduct due to his treatment of Greagor. <u>Id.</u> ¶ 32. As a result of Officer Grant's actions, Greagor alleges that he suffered multiple bruises and contusions on his chest and face, <u>id.</u> ¶ 54(a), "substantial pain and suffering" stemming from facial bruising, swelling, and tenderness, <u>id.</u> ¶ 54(b), and physical discomfort for "several days following the incident[,]" <u>id.</u> Today, he continues to suffer from severe emotional distress, including "anxiety, fear, humiliation, . . . psychological trauma[,] sleep disturbances, flashbacks, and a heightened sense of vulnerability and mistrust toward[] law enforcement officers[,]" <u>id.</u> ¶ 54(c), long-term psychological effects, including "chronic anxiety, depression, and post-traumatic stress disorder[,]" that have negatively impacted his "daily life, work performance, and personal relationships[,]" <u>id.</u> ¶

54(d), adverse consequences in ongoing legal matters, id. ¶ 54(e), and damage to family relationships and his reputation, id.

## II.    Legal Standard

In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal[]") (citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678–79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## III.  Discussion

"To state a valid claim for intentional infliction of emotional distress under Florida law, a plaintiff must plausibly allege the following elements: '(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.'" Plowright v. Mia. Dade Cnty., 102 F.4th 1358, 1367–68 (11th Cir. 2024) (quoting Moore v. Pederson, 806 F.3d 1036, 1053 (11th

Cir. 2015)). Greagor contends that Officer Grant intentionally inflicted emotional distress on him when Officer Grant "entered [Greagor's] bedroom while [Greagor] was asleep[,]" <u>see</u> Amended Complaint ¶ 124; "question[ed Greagor] despite repeated requests that [Officer Grant] leave and that [Greagor] be allowed to contact an attorney[,]" <u>id.</u>; "struck [Greagor] in the chest and face with a closed fist," <u>id.</u> ¶ 125; "punch[ed Greagor] repeatedly while [he] retreated, covered his face, and called out in pain[,]" <u>id.</u>; "applied a painful wrist lock while escorting [Greagor] outside in freezing temperatures," <u>id.</u> ¶ 126; "le[ft] him handcuffed in his underwear for nearly twenty-one minutes[,]" <u>id.</u>; and "mock[ed] his discomfort[,]" <u>id.</u> Greagor asserts that, as a result of Officer Grant's actions, he suffers from "severe emotional distress, including anxiety, humiliation, sleep disruption, and trauma." <u>Id.</u> ¶ 128.

In the Motion, Officer Grant argues that Greagor's intentional infliction of emotional distress claim fails because Greagor's allegations regarding Officer Grant's conduct do not reach "the requisite level of 'outrageousness.'" <u>See</u> Motion at 2. Specifically, Officer Grant contends that his conduct on December 23, 2023, was insufficiently outrageous because "courts applying Florida law have consistently held that isolated incidents of excessive force, even involving physical strikes, do not rise to the level of 'outrageous conduct.'" <u>Id.</u> at 5. Additionally, Officer Grant asserts that Greagor "fails to allege any facts showing the severity of the emotional distress suffered or an interference with

daily life beyond generalized boilerplate allegations and threadbare conclusions." Id. at 7.

Turning first to whether Officer Grant's conduct was sufficiently outrageous, the Court notes that this element of an intentional infliction of emotional distress claim can only be met by conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Moore, 806 F.3d at 1053 (quoting Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278–79 (Fla. 1985)). The Eleventh Circuit Court of Appeals has observed that "[o]ne way to determine whether this standard is met is to consider whether the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Plowright, 102 F.4th at 1368 (internal quotation omitted) (quoting Metro. Life Ins. Co., 467 So. 2d at 279).

"In Florida, '[w]hether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law' to be decided by the court[] at the earliest opportunity, 'not a question of fact[.]'" Id. (quoting Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)). And the conduct "must be evaluated on an objective basis." Matsumoto v. Am. Burial & Cremation Servs., Inc., 949 So. 2d 1054, 1056 (Fla. 2d DCA 2006). "The subjective response of the person affected by the conduct does not control." Id.

A review of Florida case law, as well as cases in this Circuit applying Florida law, establishes that the standard for the requisite outrageous conduct to support a claim of intentional infliction of emotional distress "is particularly high in Florida." Plowright, 102 F.4th at 1368 (quoting Clemente v. Horne, 707 So. 2d 865, 867 (Fla. 3d DCA 1998)); see also Foreman v. City of Port St. Lucie, 294 F. App'x 554, 557 (11th Cir. 2008); Golden v. Complete Holdings, Inc., 818 F. Supp. 1495, 1499 (M.D. Fla. 1993) ("Although there is no definitive example of what constitutes 'outrageous conduct' for the purposes of maintaining a cause of action for intentional infliction of emotional distress, Florida case law on the subject has evinced a comparatively high standard.").[2] Indeed, the tort is recognized "only in the most outrageous circumstances." Mundy v. S. Bell Tel. and Tel. Co., 676 F.2d 503, 505 (11th Cir. 1982) (quoting Habelow v. Travelers Ins. Co., 389 So. 2d 218, 220 (Fla. 5th DCA 1980)). Moreover, the Eleventh Circuit Court of Appeals has observed that "tortious or criminal intent, . . . intent to inflict emotional distress," and "conduct [that] has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort[]" on their own are "not enough" to establish

---

[2] The Court notes that, although decisions of district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

outrageousness. <u>Moore</u>, 806 F.3d at 1053 (internal quotations omitted) (citing and quoting <u>Metro. Life Ins. Co.</u>, 467 So. 2d at 278).

Here, Greagor contends that his claim is viable because it does not "involv[e] 'mere' excessive force[.]" <u>See</u> Response ¶ 8. Instead, Greagor explains that "[t]he combination of an unprovoked assault, deliberate humiliation, and falsification of criminal charges mirrors the sort of egregious misuse of authority that courts have deemed actionable."[3] <u>Id.</u> ¶ 7. Although Greagor is correct that this is not a case of mere excessive force, his argument is unavailing. Indeed, courts applying Florida law have held that the combination of unprovoked physical force, humiliation, and an allegedly wrongful arrest is not sufficiently outrageous to support a cause of action. <u>See</u> <u>Corbin v. Prummell</u>, 655 F. Supp. 3d 1143, 1166 (M.D. Fla. 2023); <u>Geidel v. City of Bradenton Beach</u>, 56 F. Supp. 2d 1359, 1368 (M.D. Fla. 1999).

---

[3] The only authority that Greagor cites to support this contention is <u>Williams v. City of Minneola</u>, 575 So. 2d 683 (Fla. 5th DCA 1991). <u>See</u> Response ¶ 7. Greagor contends that this case shows that "police abuse during [an] arrest can meet [the] outrageousness standard[.]" <u>Id.</u> However, the intentional infliction of emotional distress claim in <u>Williams</u> did not involve "police abuse during [an] arrest[.]" <u>See generally</u> <u>Williams</u>, 575 So. 2d. Rather, the plaintiff sued because police officers showed people video footage and photographs of a fourteen-year-old, deceased boy's autopsy. <u>See</u> <u>id.</u> at 685–86. The <u>Williams</u> court explained that intentional infliction of emotional distress claims involving "improper behavior toward the dead body of a loved one[]" are unique such that "behavior which in other circumstances might be merely insulting, frivolous, or careless becomes indecent, outrageous, and intolerable." <u>Id.</u> at 691. Other cases confirm that this kind of conduct more easily rises to the requisite level of outrageousness. <u>See, e.g.</u>, <u>Sherer v. Rubin Mem'l Chapel</u>, 452 So. 2d 574, 574–75 (Fla. 4th DCA 1984) (holding that a funeral home dressing the wrong corpse, trying to convince the deceased's family that the wrong corpse was that of their loved one, and improperly dressing the right, unprepared corpse in a way that exposed "numerous ugly bruises" at the funeral was sufficiently outrageous). Thus, <u>Williams</u> is inapposite.

- 11 -

For example, in <u>Corbin v. Prummell</u>, the plaintiff's intentional infliction of emotional distress claim involved all three of the elements that, together, Greagor contends make Officer Grant's conduct outrageous. <u>See generally</u> <u>Corbin</u>, 655 F. Supp. 3d. The plaintiff alleged that a police officer used physical force when he kicked her with his booted leg, causing her to fall and break her leg, double-lock handcuffed her, and forced her to walk to the police car on her broken leg. <u>Id.</u> at 1153, 1165–66. Further, the plaintiff alleged that this force was unprovoked because she was an "unarmed bystander," and she only exited her car to check on her husband, who was undergoing a field sobriety test twenty-five feet away. <u>Id.</u> at 1153, 1165. The plaintiff also alleged humiliating conduct because the officer handcuffed her in a pool of her own urine and forced her to lie in it afterward. <u>Id.</u> at 1165. And the plaintiff alleged that the officer wrongfully arrested her because she merely stepped out of her car to check on her husband. <u>Id.</u> at 1153, 1165. Despite the confluence of these elements, the court nonetheless held that the officer's conduct was insufficiently outrageous to support a claim of intentional infliction of emotional distress. <u>Id.</u> at 1166.

Similarly, in <u>Geidel v. City of Bradenton Beach</u>, the plaintiff alleged that police officers used physical force when they handcuffed him in a manner that restricted blood flow to his hands, threw him to the ground, dragged and jerked his body, shackled his legs, and slammed his body into the patrol car. <u>Geidel</u>, 56 F. Supp. 2d at 1363–64. He also alleged that this force was unprovoked

because he fully complied with the officers' orders. Id. at 1363. And he alleged humiliating conduct because he asserted that, when he told the officers that his handcuffs were too tight, the officers laughed at him. Id. at 1364. Additionally, the plaintiff alleged that the officers—who were investigating a domestic violence tip in the area—wrongfully arrested him because they knowingly entered the incorrect house and arrested him without evidence of criminal behavior. Id. at 1363. Again, the court held that the officers' conduct was insufficiently outrageous. Id. at 1368. Although Greagor correctly notes that Geidel does not bind the Court, the Court nonetheless finds it—and Corbin—persuasive.[4]

Viewed in the light most favorable to Greagor, Officer Grant entered Greagor's bedroom and used unprovoked physical force when he punched Greagor in the face and chest multiple times and put him in a wrist lock "for no reason[.]" See Amended Complaint ¶¶ 20–23, 25–27. He continued to question Greagor despite Greagor's request for an attorney. Id. ¶¶ 17–18. He humiliated Greagor by forcing him to stand outside in the cold in his boxers while he and Officer Dunneback laughed at Greagor. See id. ¶¶ 28–29. And he wrongfully arrested Greagor. See id. ¶¶ 14–29. As in Corbin and Geidel, the conduct

---

[4] Greagor's only other rejoinder is that he "disagrees with the finding in Geidel." Response ¶ 17. Specifically, Greagor asserts that "[t]he facts of Geidel probably should have met the standard," and he questions "[h]ow far . . . law enforcement [can] be permitted to go[.]" Id. Because Greagor cites no authority to support this critique, the Court finds Geidel no less persuasive.

described by Greagor may well be egregious, but it is not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Moore</u>, 806 F.3d at 1053 (quoting <u>Metro. Life Ins. Co.</u>, 467 So. 2d at 278–79. As a result, this conduct does not clear the "particularly high" outrageousness bar necessary to support a claim of intentional infliction of severe emotional distress under Florida law. <u>Plowright</u>, 102 F.4th at 1368 (quoting <u>Clemente</u>, 707 So. 2d at 867).

While Greagor argues that "aggravating factors[,]" such as the "invasion of the home, repeated strikes to a compliant suspect, forced public exposure in near-nudity, and fabrication of charges[,]" distinguish this case from the excessive force cases that Officer Grant cites, <u>see</u> Response ¶ 8, he cites no authority to support the contention that these are "aggravating factors[,]" <u>see generally id.</u> And, in any event, these factors largely overlap with the three elements present in <u>Corbin</u> and <u>Geidel</u>, and they are insufficient to satisfy the outrageousness standard. Notably, <u>Geidel</u> also featured the only distinct factor—invasion of the home—and the court still held that the officers' conduct was insufficiently outrageous. <u>Geidel</u>, 56 F. Supp. 2d at 1363, 1368. Upon consideration of the allegations of the operative complaint, the Court concludes that Greagor fails to plead facts sufficient to satisfy the outrageousness element of his claim.

Because Greagor has not plausibly alleged that Officer Grant's conduct was outrageous, the Court need not analyze whether Greagor's emotional distress was severe.[5] As such, the Motion is due to be granted, and Count X of Greagor's Amended Complaint is due to be dismissed.

Accordingly, it is

**ORDERED:**

1. Defendant Cecil A. Grant III's Motion to Dismiss Count X of Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Doc. 39) is **GRANTED**.

---

[5] "[S]evere emotional distress means emotional distress of such a substantial quality or enduring quality[] that no reasonable person in a civilized society should be expected to endure it." Kim v. Jung Hyun Chang, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018) (second alteration in original) (quoting Kraeer Funeral Homes, Inc. v. Noble, 521 So. 2d 324, 325 (Fla. 4th DCA 1988)); see also Brown v. Bellinger, 843 F. App'x 183, 188 (11th Cir. 2021). Greagor's conclusory allegations of emotional distress, devoid of factual support, are insufficient to plausibly allege emotional distress severe enough to support a cause of action. See Amended Complaint ¶¶ 54(a)–(e).

2. Count X of Daniel Greagor's Complaint and Demand for Jury Trial

(Doc. 32) is **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Jacksonville, Florida, this 26th day of

January, 2026.

**MARCIA MORALES HOWARD**
United States District Judge

lc36

Copies to:

Counsel of Record